UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NIKOL HAVRANEK,

      Plaintiff,                                CASE NO.:

vs.

UNIVERSITY OF FLORIDA
BOARD OF TRUSTEES,

      Defendant.
_____/

## **COMPLAINT**

COMES NOW the Plaintiff, NIKOL HAVRANEK (hereinafter "HAVRANEK"), by and through the undersigned Counsel, and sues the Defendant, UNIVERSITY OF FLORIDA BOARD OF TRUSTEES (hereinafter "UNIVERSITY OF FLORIDA"), and alleges the following:

### **JURISDICTION AND VENUE**

1.      This is a civil action with damages that exceed Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

2.      This Court is vested with federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for Plaintiff's claims arising under the following: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq (Title VII). This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws, pursuant to 28 U.S.C. § 1367, under the following: The Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA); the Florida Worker's Compensation Law, Fla. Stat. § 440.205; and the Florida Public Whistleblower's Act ("FPWA"), Florida Statute, § 112.3187.

3.     Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(b) because all actions relevant giving rise to this claim arose in this Judicial Circuit.

<u>**ADMINISTRATIVE PREREQUISITES**</u>

4.     All conditions precedent to the maintenance of this action have been met.

5.     On or about May 14, 2019, Plaintiff, HAVRANEK, timely filed a Charge of Discrimination with both the Palm Beach County Office of Equal Opportunity ("OEO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  A copy of said Charge is attached hereto as **Exhibit "A."**

6.     More than 180 days have passed since HAVRANEK filed her Charge of Discrimination with the Palm Beach County OEO and the EEOC.

7.     On or about February 20, 2020, the EEOC issued a Notice of Right to Sue, acknowledging that more than 180 days had passed since HAVRANEK's filing of her Charge. This Complaint is being filed within ninety (90) days of receipt of that notice.  A copy of said Notice of Right to Sue is attached hereto as **Exhibit "B."**

<u>**PARTIES**</u>

8.     Plaintiff, HAVRANEK is an individual who at all times relevant resided in Palm Beach County, Florida, including during the time of her employment with UNIVERSITY OF FLORIDA.  At all times herein mentioned, HAVRANEK was employed at the Institute of Food and Agricultural Sciences ("IFAS") at the UNIVERSITY OF FLORIDA with the Everglades Research and Education Center ("EREC"), located at 3200 East Palm Beach Road, Belle Glade, FL 33430.

9.      HAVRANEK was and is a member of a group protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII) and the Florida Civil Rights Act, Fla. Stat. Ann. § 760.01 (FCRA)'s prohibitions against gender discrimination and retaliation, namely:

   a.   She is a female;

   b.   She was subjected to a hostile work environment as a result of her gender; and

   c.   She suffered an adverse employment action shortly after making a formal complaint regarding the discriminatory treatment she was experiencing in the workplace and UNIVERSITY OF FLORIDA's unlawful business practices.

10.     HAVRANEK sues defendant University of Florida Board of Trustees. The Board of Trustees governs and oversees the operations of the UNIVERSITY OF FLORIDA and is an employer within the meaning of Title VII and the FCRA. The UNIVERSITY OF FLORIDA is a public university in the State university system. The Board of Trustees is a corporate body with the ability to sue and be sued. § 1001.72, Fla. Stat. (2019). The Board of Trustees' established powers and duties include controlling certain terms and conditions of employment for the University's employees.

11.     Plaintiff was a protected "employee" under the FPWA during the times relevant to this Complaint.

12.     All of the acts complained of herein were committed or omitted by employees of UNIVERSITY OF FLORIDA while working within the scope of their respective employment.

13.     Plaintiff has satisfied all conditions precedent to filing this action.

## GENERAL ALLEGATIONS

14. HAVRANEK was employed as a biological scientist (formal title Biological Scientist II) by UNIVERSITY OF FLORIDA on a continuous basis from September 2003 through January 11, 2019.

15. From the beginning of her employment with UNIVERSITY OF FLORIDA, HAVRANEK was responsible for conducting field, greenhouse, and laboratory experiments. Additionally, HAVRANEK served as Safety Coordinator for UNIVERSITY OF FLORIDA and was responsible for ensuring compliance with federal and state safety regulations and the handling of hazardous waste pursuant to requirements of the United States Environmental Protection Agency ("EPA") and the State of Florida Department of Environmental Protection ("DEP").

16. HAVRANEK's supervisors were Dr. Calvin Odero, the Extension Weed Specialist & Associate Professor, and Dr. Gregg Nuessly, the Center Director and Professor.

17. By all accounts, HAVRANEK excelled at her position, having only ever received excellent performance reviews (100%), and she never received any disciplinary warnings throughout the over fifteen (15) years that she was employed by the UNIVERSITY OF FLORIDA.

18. From the inception of her employment with UNIVERSITY OF FLORIDA, HAVRANEK always experienced some level of gender discrimination or disparity. Beginning in September 2015 when Dr. Greg Nuessly assumed his permanent role as Center Director and continuing through the end of her employment with UNIVERSITY OF FLORIDA, however, HAVRANEK noticed a practice of discrimination based on her gender by UNIVERSITY OF FLORIDA.

19. From the time Dr. Nuessly assumed his role forward, no women were ever hired or considered for any positions at the EREC, and those women who were already employed at the

UNIVERSITY OF FLORIDA, including but not limited to HAVRANEK, were employees who had been hired by former directors.

20.     Dr. Nuessly constantly would harass HAVRANEK with expectations for her employment that went far beyond her documented job description and held HAVRANEK to a different standard than her male counterparts.

21.     Dr. Nuessly would contact HAVRANEK after work hours with expectations for work to be completed by the next morning, he would humiliate HAVRANEK during meetings in front of male employees, and, on various occasions, he threatened to lower her pay and to take action against her if she was not completing all of his unfounded expectations. Specifically, on one such occasion on February 28, 2018, Dr. Nuessly contacted HAVRANEK after her employment hours requesting her to bring important protective gear from the lab to him at a conference center by 10 a.m. the following day.

22.     Despite repeated perfect performance ratings, HAVRANEK was still held to a different standard than her male counterparts and was still repeatedly belittled to the point of tears and embarrassment.

23.     HAVRANEK would repeatedly voice complaints regarding her mistreatment as compared to her male counterparts to her direct supervisor, Dr. Calvin Odero.

24.     Notwithstanding her complaints, HAVRANEK's poor treatment continued and her complaints were not addressed.

25.     On March 6, 2018, HAVRANEK sent a letter to Dr. Nuessly voicing her complaints. She explicitly expressed the following actions of Dr. Nuessly:

     a.   Dr. Nuessly repeatedly belittled HAVRANEK;

b.  Dr. Nuessly verbally harassed and embarrassed HAVRANEK in front of her cohorts during meetings, through email, and in conversations;

c.  Dr. Nuessly constantly threatened to reduce her pay without justification and despite in fact being long overdue for a promised raise; and

d.  Dr. Nuessly consistently required her to perform tasks that were not part of her job responsibilities.

Additionally, HAVRANEK referenced a verbal agreement with her former supervisor regarding an additional 10% raise that she was never given by Dr. Nuessly, despite her achieving the role of "senior biologist."

26.  Following her letter to Dr. Nuessly, HAVRANEK was confronted by Dr. Nuessly and Dr. Odero about her complaint and her concerns regarding Dr. Neussly's conduct. In an effort to "resolve the issue", on or about March 27, 2018, UNIVERSITY OF FLORIDA retaliated against HAVRANEK and removed HAVRANEK from her role as "Safety Coordinator," resulting in a pay reduction for HAVRANEK—revoking a previous 10% pay increase for her hard work and efforts.

27.  Interestingly, this 10% pay reduction ($49,059.94 was decreased to $45,219.56) which should have reflected a 10% reduction in her workload, only removed 5% of her responsibilities.

28.  On March 14, 2018, HAVRANEK contacted Leticia Forster in Human Resources for UNIVERSITY OF FLORIDA to seek recourse for the unjust reduction in her pay. These complaints to Human Resources provided no relief to HAVRANEK.

29.  Thereafter, Dr. Odero's treatment of HAVRANEK worsened steadily throughout 2018. Dr. Odero was often verbally hostile towards HAVRANEK, and he often made outrageous

and impossible demands upon HAVRANEK as to her work product to make her fail and thus create items for which he could reprimand HAVRANEK.

30.    Additionally, following HAVRANEK's removal as Safety Coordinator at the EREC in March of 2018 and removal of her keys to access the area where the hazardous waste was stored, no person was appointed to assume the responsibilities and tasks performed by HAVRANEK as Safety Coordinator.

31.    UNIVERSITY OF FLORIDA is, and at all times material hereto was, subject to both Federal and State regulation of chemical and radioactive waste pursuant to requirements of the United States EPA and the State of Florida DEP.

32.    Following HAVRANEK's removal as Safety Coordinator, UNIVERSITY OF FLORIDA and the EREC failed to be in compliance with the EPA and DEP requirements. Specifically, UNIVERSITY OF FLORIDA violated these policies through the following actions at the EREC:

    a.  Hazardous Waste containers were not properly marked with the specific words "Hazardous Waste;"

    b.  Hazardous Waste containers were either not labeled at all or labeled incorrectly.

    c.  EREC was classified as a "small quantity generator" meaning every 180 days Hazardous Waste containers had to be removed.  Notwithstanding, Hazardous Waste containers were not removed during their scheduled removal in May 2018, but rather the Hazardous Waste remained in the EREC until December 2018.

    d.  Biohazardous or Radioactive Waste was not separated and segregated from Hazardous Waste.

e. EREC did not have a Safety Coordinator after HAVRANEK was removed from the position. As a result, staff accumulating Hazardous Waste could not take the accumulated Hazardous Waste to the allocated Satellite Accumulation Area.

f. Hazardous Waste was leaking and/or spilling out of its containers and packaging because of the heat and building conditions (hot and humid) at the EREC.

g. The Hazardous Waste Satellite Accumulation Area was often left unlocked and wide open. This area is supposed to be accessible only to authorized personnel with specific trainings held only by the Safety Coordinator.

33. Because of UNIVERSITY OF FLORIDA's violations, there existed a backload of hazardous waste stored incorrectly at the EREC which caused leaks and spills and, resultingly, an unquestionable health issue for numerous employees, including HAVRANEK.

34. In June 2018, HAVRANEK began to feel effects on her health due to the hazardous waste buildup in the EREC building in which she worked, Building 69. Specifically, HAVRANEK began experiencing a bad cough and throat irritation.

35. On June 6, 2018, because of her poor health symptoms, HAVRANEK was forced to visit her primary care physician for an opinion on her health issues. HAVRANEK's physician recommended she visit an Ear, Nose and Throat (ENT) Specialist because of the unusual persistence and causes of her symptoms.

36. Thereafter, because of her ongoing health condition caused by the hazardous waste buildup, on August 13, 2018, HAVRANEK alerted her supervisor, Dr. Odero, by email stating that she was taking a sick day because of an ongoing sore throat. HAVRANEK visited an ENT Specialist on August 13, 2018 in the hopes of resolving her health issues without any further suffering.

37.     On September 29, 2018, HAVRANEK visited an ENT Specialist for a third time in relation to her suffering with an ongoing and persistent cough and throat irritation.

38.     HAVRANEK first notified UNIVERSITY OF FLORIDA of the EREC's failure to be in compliance with EPA and DEP regulations because of hazardous waste buildup and the resulting health problems/findings of her doctors in June 2018, first turning to Dr. Odero in the hopes that the hazardous waste buildup could be managed appropriately. HAVRANEK continuously alerted Dr. Odero in the following months, but when nothing was done to rectify the situation, HAVRANEK was forced to notify other parties at the UNIVERSITY OF FLORIDA, namely the Environmental Health & Safety Hazardous Material Program Manager and the Human Resources Department, for the desired assistance.

39.     Specifically, it was not until October 12, 2018 that HAVRANEK was contacted for the first time by Matthew Doty, UNIVERSITY OF FLORIDA's Environmental Health & Safety Hazardous Material Program Manager. In his email, Doty requested to speak with HAVRANEK so he could "better assist the new person taking over."

40.     Following contact from Mr. Doty, HAVRANEK voiced her concerns regarding the hazardous waste conditions.

41.     Specifically, on October 16, 2018, HAVRANEK emailed Mr. Doty stating that since she was removed as Safety Coordinator, the EREC was in turmoil as a result of the hazardous waste and was out of compliance with EPA and DEP regulations on hazardous waste. HAVRANEK informed Mr. Doty of her health concerns and the horrible conditions regarding the storage and improper disposal of hazardous waste. HAVRANEK was met with no response from Mr. Doty.

42.     On November 8, 2018, HAVRANEK followed up with Mr. Doty and again emailed him, stressing the lack of qualified individuals at the EREC in handling the waste, identifying the facility's continuing violations of EPA and DEP regulations on hazardous waste, and stating that nothing had been done to rectify the situation. Mr. Doty, rather than address the issue, forwarded the issue to the Human Resources department.

43.     Almost two weeks later, on November 19, 2018, Ms. Leticia Forster of UNIVERSITY OF FLORIDA's Human Resources department emailed HAVRANEK to schedule a call with HAVRANEK to discuss her health concerns.

44.     On November 26, 2018 and November 27, 2018, HAVRANEK had an email conversation with Ms. Forster in order to schedule a phone call with her, emphasizing the ongoing health and safety concerns and the failure to be in compliance with EPA and DEP regulations on hazardous waste at the EREC.

45.     On November 29, 2018, HAVRANEK had a phone call with Ms. Leticia Forster in relation to the ongoing situation with the hazardous waste buildup at the EREC and HAVRANEK's health issues.

46.     On November 30, 2018, and in accordance with a request from Human Resources, HAVRANEK forwarded photographs of the unsafe work conditions to Ms. Leticia Forster to address the hazardous waste.

47.     Thereafter, the hazardous chemicals which HAVRANEK had alerted to Human Resources were moved from the area in which they were to another room at the EREC, but still in Building 69, the building in which HAVRANEK works.

48.     On December 10, 2018, HAVRANEK advised Ms. Leticia Forster via email of the ongoing effect of the hazardous chemicals due to their leaking in an area where she works every

day. On December 11, 2018, Ms. Forster indicated that UNIVERSITY OF FLORIDA was researching the whole situation, which included involving the Department of Environmental Health & Safety. HAVRANEK, however, was never provided any evidence that further efforts were being made to rectify the situation with the hazardous waste nor that the UNIVERSITY OF FLORIDA was making efforts to be in compliance with EPA and DEP regulations on hazardous waste.

49.     In dealing with HAVRANEK's personal health issues, on November 29, 2018, Human Resources had referred HAVRANEK to a Workers' Compensation Specialist, Tara Hetsler, to address her health concerns and her need to see a specialist with her health issues.

50.     Pursuant to the requests of the workers' compensation specialist, on November 29, 2018, HAVRANEK emailed the approval for her medical records to be released and cancelled her privately scheduled follow-up appointment because Ms. Hetsler had stated that UNIVERSITY OF FLORIDA would send HAVRANEK to a specialist.

51.     After hearing nothing from worker's compensation, HAVRANEK again emailed Ms. Leticia Forster in Human Resources on December 10, 2018. HAVRANEK advised Ms. Forster that she had to reschedule her privately-scheduled follow-up appointment and see her personally-obtained specialist, who in turn placed HAVRANEK on another medication due to her health issues.

52.     Additionally, after advising Dr. Odero of her need to attend a doctor's appointment on December 10, 2018, Dr. Odero became visually irritated with HAVRANEK, leading to more retaliation against HAVRANEK.

53.     In response to HAVRANEK's complaints, on December 11, 2018 Ms. Forster stated that she requested an update on HAVRANEK's worker's compensation claim and asked HAVRANEK to alert her if any additional incidents of retaliation occurred against HAVRANEK.

54.     Despite her requests for a referral to an ENT Specialist to better assist with her health issues, the Workers' Compensation specialist claimed that worker's compensation was still working on HAVRANEK's case, and the Workers' Compensation specialist ignored HAVRANEK's request for a referral citing to the rarity of requests for ENTs in workers' compensation.

55.     As a result, HAVRANEK was forced to see an ENT Specialist on her own due to her ongoing and progressing sickness. After attending appointments on December 10, 2018 and December 18, 2018, the ENT Specialist opined that HAVRANEK's conditions were caused by exposure to hazardous waste and that she was working in an unsafe work environment.

56.     Additionally, UNIVERSITY OF FLORIDA refused to reimburse HAVRANEK's medical treatment for the interim time frame when she had to see a specialist while her request for a referral from the UNIVERSITY OF FLORIDA was ignored.

57.     Despite the delay in dealing with HAVRANEK's poor health issues and a refusal to assist HAVRANEK when she needed it most, UNIVERSITY OF FLORIDA's Workers' Compensation Specialist Tara Hetsler emailed HAVRANEK on January 17, 2019 stating that "UF did offer [her] the option of going through the [worker's compensation] process. Private visits are not covered."

58.     Additionally, Human Resources reported the situation directly to Dr. Odero, resulting in further harassing and retaliatory actions against HAVRANEK. Specifically, Dr. Odero

created a hostile and retaliatory work environment as indicated by the following harassing actions against HAVRANEK:

    a.  Dr. Odero removed HAVRANEK's keys such that she no longer had access to her major working areas;

    b.  Dr. Odero moved HAVRANEK's office to a room with no window/phone line;

    c.  Dr. Odero stopped including HAVRANEK in meetings with other staff members;

    d.  Dr. Odero demanded that HAVRANEK sign falsified documents, specifically requesting that HAVRANEK lie in a former student's letter of recommendation for licensure;

    e.  Dr. Odero emailed tasks to be completed by HAVRANEK when it was known by Dr. Odero that she was out of the office and requested the task be completed before HAVRANEK was known to be returning to the office;

    f.  Dr. Odero did not allow HAVRANEK to attend events and meetings, such as science fairs and WSSA meetings, that she had attended for years; instead he invited students to attend these meetings and events;

    g.  Dr. Odero forced HAVRANEK to inventory chemicals in an unairconditioned room in the heat of summer despite being aware of HAVRANEK's health conditions and the ongoing problem with hazardous waste at the EREC;

    h.  Dr. Odero removed HAVRANEK's office privileges;

    i.  Dr. Odero denied and thereafter demanded documentation not required of others for medical leave for doctor's appointments, despite knowing this treatment was covered under workers' compensation and as a result of a work-related injury; and

      j.   Dr. Odero refused to recommend HAVRANEK for promotions and salary increases, despite all other similarly tenured biologists having received multiple promotions and salary increases.

59.    On December 18, 2018, HAVRANEK again turned to Ms. Leticia Forster in Human Resources in an effort to help deal with the retaliation against her by Dr. Odero. In this email HAVRANEK cited to the specific acts of retaliation she faced by Dr. Odero and stated that the resulting environment was hostile. No action was taken by UNIVERSITY OF FLORIDA in response to HAVRANEK's email.

60.    Even following HAVRANEK's complaints to Human Resources, on December 18, 2018, HAVRANEK emailed Dr. Odero to alert him that she would be out sick the remainder of the week because her doctor had advised her to not return to work until her throat irritation subsides. Rather than empathize with HAVRANEK because of his knowledge of her health issues, Dr. Odero responded on December 19, 2018 stating that he required a note from her doctor in order to validate her "excuse to miss work for the rest of the week."

61.    On December 27, 2018, HAVRANEK sent an email to her director, Dr. Nuessly, resigning from her position as Biological Scientist II at the EREC. In this email, HAVRANEK again cited to Dr. Odero's unprofessional and harassing actions towards her.

62.    HAVRANEK, because of the hostile work environment, harassment, and retaliation she was subjected to, was left with no choice but to resign from her workplace at UNIVERSITY OF FLORIDA's EREC. The harassment and retaliation faced by HAVRANEK at the hands of UNIVERSITY OF FLORIDA's supervisory personnel ultimately led to her resignation.

63.     The conditions faced by HAVRANEK were so intolerable that any reasonable person would have been compelled to resign. Accordingly, HAVRANEK's resignation constituted a constructive discharge (hereinafter referred to as HAVRANEK's "termination").

64.     On December 28, 2018, Dr. Nuessly responded accepting HAVRANEK's letter of resignation effective January 11, 2019, yet he failed to address any of HAVRANEK's allegations against Dr. Odero.

## COUNT I – RETALIATION IN VIOLATION OF THE FLORIDA PUBLIC WHISTLEBLOWER ACT

65.     Plaintiff HAVRANEK incorporates the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

66.     At all times material, HAVRANEK was a protected employee under the Florida Public Whistleblower's Act ("FPWA").

67.     UNIVERSITY OF FLORIDA was HAVRANEK's "employer" as defined by the FPWA.

68.     The actions and or omissions by UNIVERSITY OF FLORIDA violate the FPWA. *See* Fla. Stat. §§ 112.3187-112.31895.

69.     Specifically, the FPWA states that "An agency or independent contractor shall not dismiss, discipline, or take any other adverse personnel action against an employee for disclosing information on their own initiative in a written and signed complaint. . . or [in] any written complaint to their supervisory officials." *See* Fla. Stat. §§ 112.3187(4) and (7).

70.     An employee must disclose information pertaining to "Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare." Fla. Stat. § 112.3187(5)(a).

71.     HAVRANEK's complaints of UNIVERSITY OF FLORIDA's actual or reasonably perceived violations of laws, rules, and regulations constitute protected activity which invokes the protection of the Florida Public Whistle Blower Statute. *See* Fla. Stat. §§ 112.3187(5)–(7). Specifically, HAVRANEK regularly complained to her supervisors of UNIVERSITY OF FLORIDA's failure to be in compliance with EPA and DEP regulations on hazardous waste—detailed further in Paragraph 32 of this complaint—in person, by telephone, and in writing on numerous occasions.

72.     Additionally, HAVRANEK complained of UNIVERSITY OF FLORIDA's failure to be in compliance with EPA and DEP regulations on hazardous waste in numerous emails to Matthew Doty, Environmental Health & Safety Hazardous Material Program Manager at UNIVERSITY OF FLORIDA. HAVRANEK's complaints to Doty constitute protected activity which invokes the protection of the Florida Public Whistle Blower Statute. *See* Fla. Stat. §§ 112.3187(5)–(7).

73.     Further, HAVRANEK's complained of UNIVERSITY OF FLORIDA's failure to be in compliance with EPA and DEP regulations on hazardous waste in various phone calls and emails to Leticia Forster in Human Resources for UNIVERSITY OF FLORIDA. HAVRANEK's complaints to Human Resources constitute protected activity which invokes the protection of the Florida Public Whistle Blower Statute. *See* Fla. Stat. §§ 112.3187(5)–(7).

74.     HAVRANEK's termination was retaliation for her activities protected by the FPWA, including consistently reporting about illegalities and an unsafe and hostile work environment in the workplace to her supervisors, Human Resources, and UNIVERSITY OF FLORIDA's Environmental Health & Safety Hazardous Material Program Manager.

75.     HAVRANEK's complaints as described in Paragraph 73–75 of this Complaint constitute protected activities which invoke protections under the FPWA.

76.     HAVRANEK's termination constituted an adverse employment action against her which was causally related to HAVRANEK's objections to and reporting of UNIVERSITY OF FLORIDA's failure to be in compliance with EPA and DEP regulations on hazardous waste.

77.     HAVRANEK suffered damages and was injured due to UNIVERSITY OF FLORIDA's violations of the FPWA, to which HAVRANEK is entitled to legal and injunctive relief.

78.     Any alleged non-retaliatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason of retaliating against HAVRANEK because of her statutorily protected expression.

79.     As a direct and proximate result of UNIVERSITY OF FLORIDA's willful, knowing and intentional retaliation, HAVRANEK has suffered and will continue to suffer damages including lost wages and benefits, pain and suffering, humiliation, emotional distress and mental anguish; HAVRANEK has suffered and will continue to suffer a loss of earnings and other employment related benefits and job opportunities. Thus, HAVRANEK is hereby entitled to general compensatory damages in an amount to be proven at trial.

80.     As a further and direct proximate result of UNIVERSITY OF FLORIDA's violation as herein described, HAVRANEK has been compelled to retain the services of the undersigned law firm. HAVRANEK will incur and continue to incur reasonable attorney's fees and costs.

81.     HAVRANEK requests that attorneys' fees, costs and expenses be awarded pursuant to the FPWA.

## COUNT II – VIOLATION OF FLORIDA WORKER'S COMPENSATION LAW
## (FLA. STAT. § 440.205)

82.     Plaintiff HAVRANEK incorporates the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

83.     HAVRANEK, by her above-described conduct, was acting in a way consistent with the procedures for seeking worker's compensation benefits under Chapter 440, Florida Statutes.

84.     HAVRANEK's worker's compensation claim is, and all times relevant was, a valid claim.

85.     Florida Statute Section 440.205 states, "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."

86.     After HAVRANEK filed a valid worker's compensation claim, UNIVERSITY OF FLORIDA retaliated against her by coercing her and leaving her with no choice but to resign (HAVRANEK's termination), in violation of the Florida Worker's Compensation Law, Florida Statute § 440.205.

87.     HAVRANEK's filing of a valid worker's compensation claim constituted statutorily protected conduct.

88.     UNIVERSITY OF FLORIDA wrongfully and unlawfully took an adverse employment action against HAVRANEK for the purpose of retaliating against her for pursuing a valid worker's compensation claim, in violation of HAVRANEK's rights under § 440.205 and Florida common law.

89.     HAVRANEK's termination of employment by UNIVERSITY OF FLORIDA was causally related to her statutorily protected conduct.

18

90.     HAVRANEK has suffered direct pecuniary losses, including lost wages, and will suffer future pecuniary losses as a direct result of UNIVERSITY OF FLORIDA's above-described violations of Florida Statute § 440.205.

91.     HAVRANEK has suffered, is now suffering, and will continue to suffer lost wages, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of UNIVERSITY OF FLORIDA's violation of Florida Statute § 440.205.

<u>COUNT III –VIOLATION OF TITLE VII -</u>
<u>GENDER DISCRIMINATION</u>

92.     Plaintiff, HAVRANEK adopts and incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

93.     HAVRANEK is a member of a protected class of female citizens.

94.     At all times necessary, HAVRANEK was qualified to perform her duties as a Biological Scientist.

95.     During the course of HAVRANEK's employment with UNIVERSITY OF FLORIDA, HAVRANEK was subjected to a discriminatory, hostile and offensive work environment because of her gender (female), as more fully described in the General Allegations.

96.     The offensive and discriminatory conduct referred to in the General Allegations was offensive to HAVRANEK and would be offensive to a reasonable person.

97.     HAVRANEK was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

98.     Her superiors directed much of the conduct referred to in this Complaint to HAVRANEK.

99.     HAVRANEK's termination constituted an adverse employment action against her which was causally related to HAVRANEK's gender (female).

100.    Similarly situated male employees were treated more favorably by HAVRANEK's supervisors at UNIVERSITY OF FLORIDA than HAVRANEK. Specifically, the conduct endured by HAVRANEK as referred to in the General Allegations of this Complaint was not faced by HAVRANEK's male counterparts.

101.    As a direct and proximate result of the foregoing, HAVRANEK has suffered and continues to suffer embarrassment, humiliation, emotional distress and other forms of damage.

102.    Any alleged nondiscriminatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason for discriminating against her based on her gender.

103.    HAVRANEK has suffered damages on an on-going and continuous nature.

104.    As a result of the deprivations of rights at the hands of UNIVERSITY OF FLORIDA, HAVRANEK has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT IV -VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT- GENDER DISCRIMINATION

105.    Plaintiff, HAVRANEK adopts and incorporates by reference the allegations in paragraphs 1 through 64 of this Complaint.

106.    At all times material hereto, UNIVERSITY OF FLORIDA failed to comply with the FCRA, which states, in part, that it is an unlawful employment practice for an employer "[t]o discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status."

107.    HAVRANEK is a member of a protected class of female citizens.

108.    At all times necessary, HAVRANEK was qualified to perform her duties as a Biological Scientist.

109.    During the course of HAVRANEK's employment with UNIVERSITY OF FLORIDA, HAVRANEK was subjected to a discriminatory, hostile and offensive work environment because of her gender (female), as more fully described in the General Allegations.

110.    The offensive and discriminatory conduct referred to in the General Allegations was offensive to HAVRANEK and would be offensive to a reasonable person.

111.    HAVRANEK was subjected to the conduct referred to in the General Allegations of this Complaint because she is a female.

112.    Her superiors directed much of the conduct referred to in this Complaint to HAVRANEK.

113.    HAVRANEK's termination constituted an adverse employment action against her which was causally related to HAVRANEK's gender (female).

114.    Similarly situated male employees were treated more favorably by HAVRANEK's supervisors at UNIVERSITY OF FLORIDA than HAVRANEK. Specifically, the conduct endured by HAVRANEK as referred to in the General Allegations of this Complaint was not faced by HAVRANEK's male counterparts.

115.    As a direct and proximate result of the foregoing, HAVRANEK has suffered and continues to suffer embarrassment, humiliation, emotional distress and economic losses.

116.    Any alleged nondiscriminatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason for discriminating against her based on her gender.

117.    UNIVERSITY OF FLORIDA's actions were malicious and were recklessly indifferent to HAVRANEK's rights pursuant to Fla. Stat. § 760.10.

118.    The aforementioned actions of UNIVERSITY OF FLORIDA were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

## COUNT V – RETALIATION IN VIOLATION OF
## THE FLORIDA CIVIL RIGHTS ACT

119.    Plaintiff HAVRANEK incorporates the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

120.    The FCRA, Fla. Stat. Chapter 760.10(7), reads in applicable part, as follows: "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under [Section 760.10]."

121.    UNIVERSITY OF FLORIDA is an "employer" as defined by § 760.09(7) of the Florida Statutes.

122.    HAVRANEK is a forty-three-year-old female, who is guaranteed specific civil rights under the Florida Civil Rights Act of 1992, Fla. Stat. 760.10 et. seq.

123.    HAVRANEK engaged in a statutorily protected expression, namely she repeatedly voiced complaints of mistreatment because of her gender against the director of the EREC, Dr. Nuessly, to her direct supervisor, Dr. Odero.

124.    When nothing was done to rectify this harassment and mistreatment, HAVRANEK wrote a letter to Dr. Nuessly directly complaining of his harassment and discrimination against her.

125.    Following her complaints, HAVRANEK suffered an adverse employment action—namely, she received a 10% decrease in her pay and removal of responsibilities.

126.     HAVRANEK then contacted the Human Resources Department at the UNIVERSITY OF FLORIDA with her concerns. Following her complaints, HAVRANEK was subjected to hostility by Dr. Odero, resulting in changes to her responsibilities, and ultimately, her overall treatment in the workplace.

127.     Following the improper storage and leaks and spills of hazardous waste at the EREC, HAVRANEK began suffering from health problems and voiced her concerns to Dr. Odero, to the Environmental Health & Safety Hazardous Material Program Manager at the UNIVERSITY OF FLORIDA, Mr. Doty, and to Human Resources. Nothing was done to rectify the situation.

128.     Thereafter, Human Resources again reported HAVRANEK's complaints to Dr. Odero, who resultingly took further harassing and retaliatory actions against HAVRANEK detailed further above.

129.     HAVRANEK, because of the hostile work environment, harassment, and retaliation she was subjected to, was left with no choice but to resign from her workplace at UNIVERSITY OF FLORIDA's EREC.

130.     A causal connection exists between HAVRANEK's complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her pay reduction and her termination.

131.     Similarly situated male employees were treated more favorably by HAVRANEK's supervisors at UNIVERSITY OF FLORIDA than HAVRANEK. Specifically, the conduct endured by HAVRANEK as referred to in the General Allegations of this Complaint was not faced by HAVRANEK's male counterparts.

132.   Any alleged nondiscriminatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason for discriminating against her based on her gender.

133.   As a direct and proximate result of UNIVERSITY OF FLORIDA's conduct and its employees' actions, HAVRANEK has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including health insurance, life insurance, and dental insurance, all of which she would have continued to receive had she not been unlawfully terminated.

134.   What is more, the unlawful employment practices complained of above committed by UNIVERSITY OF FLORIDA were willful, wanton, intentional and with malice or with reckless indifference to HAVRANEK's statutorily protected rights, such that HAVRANEK is entitled to punitive damages.

135.   HAVRANEK has been required to retain the legal services of the undersigned Counsel to enforce her rights under the FCRA and is required to pay her attorney a reasonable fee for services rendered in this cause.

## <u>COUNT VI – RETALIATION IN VIOLATION OF<br>TITLE VII</u>

136.   Plaintiff HAVRANEK incorporates the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

137.   Under Title VII of the Civil Rights Act of 1964, as amended, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3 et seq.

138.    HAVRANEK is a forty-three-year-old female who is guaranteed specific civil rights under Title VII of the Civil Rights Act of 1964, as amended.

139.    UNIVERSITY OF FLORIDA discriminated against HAVRANEK in violation of Title VII of the Civil Rights Act when UNIVERSITY OF FLORIDA and its agents or employees mistreated HAVRANEK following her repeated complaints.

140.    Namely, HAVRANEK repeatedly voiced complaints of mistreatment because of her gender against the director of the EREC, Dr. Nuessly, to her direct supervisor, Dr. Odero.

141.    When nothing was done to rectify this harassment and mistreatment, HAVRANEK wrote a letter to Dr. Nuessly directly complaining of his harassment and discrimination against her.

142.    Following her complaints, HAVRANEK suffered an adverse employment action—namely, she received a 10% decrease in her pay and removal of responsibilities.

143.    HAVRANEK then contacted the Human Resources Department at the UNIVERSITY OF FLORIDA with her concerns. Following her complaints, HAVRANEK was subjected to hostility by Dr. Odero, resulting in changes to her responsibilities, and ultimately, her overall treatment in the workplace.

144.    Following the improper storage and leaks and spills of hazardous waste at the EREC, HAVRANEK began suffering from health problems and voiced her concerns to Dr. Odero, to the Environmental Health & Safety Hazardous Material Program Manager at the UNIVERSITY OF FLORIDA, Mr. Doty, and to Human Resources. Nothing was done to rectify the situation.

145.    Thereafter, Human Resources again reported HAVRANEK's complaints to Dr. Odero, who resultingly took further harassing and retaliatory actions against HAVRANEK detailed further above.

146.    HAVRANEK, because of the hostile work environment, harassment, and retaliation she was subjected to, was left with no choice but to resign from her workplace at UNIVERSITY OF FLORIDA's EREC.

147.    What is more, UNIVERSITY OF FLORIDA violated Title VII of the Civil Rights Act when it forced HAVRANEK to resign following her complaints of harassment and hostile work environment resulting from gender discrimination.

148.    A causal connection exists between HAVRANEK's repeated complaints of discrimination and harassment, i.e. her statutorily protected expression, and her adverse employment action, namely her pay reduction and her termination.

149.    Similarly situated male employees were treated more favorably by HAVRANEK's supervisors at UNIVERSITY OF FLORIDA than HAVRANEK. Specifically, the conduct endured by HAVRANEK as referred to in the General Allegations of this Complaint was not faced by HAVRANEK's male counterparts.

150.    Any alleged nondiscriminatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason for discriminating against her based on her gender.

151.    As a direct and proximate result of UNIVERSITY OF FLORIDA's conduct and its employees' actions, HAVRANEK has suffered irreparable harm through her loss of gainful employment and through the loss of valuable employment benefits, including health insurance, life insurance, and dental insurance, all of which she would have continued to receive had she not been unlawfully terminated.

152.    What is more, the unlawful employment practices complained of above committed by UNIVERSITY OF FLORIDA were willful, wanton, intentional and with malice or with

reckless indifference to HAVRANEK's statutorily protected rights, such that HAVRANEK is entitled to punitive damages.

153.     HAVRANEK has been required to retain the legal services of the undersigned Counsel to enforce her rights under Title VII of the Civil Rights Act and is required to pay her attorney a reasonable fee for services rendered in this cause.

## COUNT VII - HOSTILE WORK ENVIRONMENT BASED ON GENDER IN VIOLATION OF TITLE VII

154.     HAVRANEK realleges and incorporates herein all of the allegations set forth in paragraphs 1 through 64 above as if set forth herein.

155.     HAVRANEK brings this action under 42 U.S.C. Sect. 2000(e), et seq. As set forth in the paragraphs herein, UNIVERSITY OF FLORIDA harassed HAVRANEK thereby subjecting her to a hostile work environment because of her gender (female) in violation of Section 703(a) of Title VII, 42 U.S.C § 2000e-2.

156.     To establish a prima facie case of hostile work environment and harassment under Title VII, a plaintiff must prove that: (1) she belongs to protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on protected characteristic of plaintiff, (4) the harassment was sufficiently severe or pervasive to alter terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability. Here, HAVRANEK satisfies all five elements.

157.     HAVRANEK is a female; therefore, she falls within a protected class.

158.     As set forth above, HAVRANEK has been the subject of unwelcome harassment based on her gender and the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment with UNIVERSITY OF FLORIDA and create a discriminatory

harassing and hostile work environment. The conduct was committed in large part by UNIVERSITY OF FLORIDA's supervisory personnel; therefore, UNIVERSITY OF FLORIDA is responsible for the hostile environment.

159.    This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and HAVRANEK perceived it as abusive.

160.    The harassment occurred frequently, was severe and humiliating and unreasonably interfered with HAVRANEK's ability to perform her job as a biological scientist.

161.    UNIVERSITY OF FLORIDA is liable because, as set forth above, their supervisory personnel, Dr. Odero and Dr. Nuessly, were responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent them were undertaken by UNIVERSITY OF FLORIDA, including the human resources department.

162.    The hostile work environment forced to be endured by HAVRANEK as referred to in the General Allegations of this Complaint was not faced by similarly situated male employees of UNIVERSITY OF FLORIDA.

163.    Any alleged nondiscriminatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason for creating this hostile work environment based on her gender.

164.    As a direct and proximate result of the actions or omissions of UNIVERSITY OF FLORIDA, HAVRANEK has sustained those damages set forth above, all of which she is entitled to recover by law.

165.    As a result of the deprivations of rights at the hands of UNIVERSITY OF FLORIDA, HAVRANEK has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to 42 U.S.C. Section 2000e-5k and otherwise by law.

## COUNT VIII - HOSTILE WORK ENVIRONMENT BASED ON GENDER IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

166.    HAVRANEK realleges and incorporates herein all of the allegations set forth in paragraphs 1 through 64 above as if set forth herein.

167.    This is an action for damages and injunctive relief brought pursuant to the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11.

168.    HAVRANEK belongs to a protected class within the meaning of the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11, because she is a female.

169.    To establish a prima facie case of hostile work environment and harassment under the FCRA, a plaintiff must prove that: (1) she belongs to protected group, (2) she has been subject to unwelcome harassment, (3) the harassment was based on protected characteristic of plaintiff, (4) the harassment was sufficiently severe or pervasive to alter terms and conditions of employment and create a discriminatorily abusive working environment, and (5) the employer is responsible for such environment under a theory of vicarious or direct liability. Here, HAVRANEK satisfies all five elements.

170.    HAVRANEK is a female; therefore, she falls within a protected class.

171.    As set forth above, HAVRANEK has been the subject of unwelcome harassment based on her gender and the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment with UNIVERSITY OF FLORIDA and create a discriminatory harassing and hostile work environment. The conduct was committed in large part by

UNIVERSITY OF FLORIDA's supervisory personnel; therefore, UNIVERSITY OF FLORIDA is responsible for the hostile environment.

172.    This conduct was "severe or pervasive," so that it created an environment where a reasonable person would find it hostile or abusive and HAVRANEK perceived it as abusive.

173.    The harassment occurred frequently, was severe and humiliating and unreasonably interfered with HAVRANEK's ability to perform her job as a biological scientist.

174.    UNIVERSITY OF FLORIDA is liable because, as set forth above, their supervisory personnel, Dr. Odero and Dr. Nuessly, were responsible for the discriminatory actions complained of, which actions were in violation of law, and no corrective action to stop and/or prevent them were undertaken by UNIVERSITY OF FLORIDA, including the human resources department.

175.    The hostile work environment forced to be endured by HAVRANEK as referred to in the General Allegations of this Complaint was not faced by similarly situated male employees of UNIVERSITY OF FLORIDA.

176.    Any alleged nondiscriminatory reason for this treatment of HAVRANEK by UNIVERSITY OF FLORIDA is a mere pretext for the actual reason for creating this hostile work environment based on her gender.

177.    As a direct and proximate result of the actions or omissions of UNIVERSITY OF FLORIDA, HAVRANEK has sustained those damages set forth above, all of which she is entitled to recover by law.

178.    As a direct and proximate result of the actions or omissions of UNIVERSITY OF FLORIDA to HAVRANEK, HAVRANEK has sustained those damages set forth above, all of

which she is entitled to recover under the terms of the Florida Civil Rights Act of 1992 as established, Fla. Stat. §§ 760.01-760.11.

179.    As a result of the deprivations of rights at the hands of UNIVERSITY OF FLORIDA, HAVRANEK has been forced to hire an attorney and pay him a reasonable fee, which she is entitled to recover pursuant to the Florida Civil Rights Act, Fla. Stat. §§ 760.01-760.11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, NIKOL HAVRANEK, demands judgment against Defendant, UNIVERSITY OF FLORIDA, and requests the following relief:

1. Enter judgment in favor of HAVRANEK for UNIVERSITY OF FLORIDA's violations of the FPWA, Florida Worker's Compensation Law, Title VII, and the FCRA.

2. Award HAVRANEK actual damages suffered;

3. Award back pay and value of lost employment benefits to HAVRANEK;

4. Award front pay to HAVRANEK for the years she would have worked absent UNIVERSITY OF FLORIDA's discriminatory treatment;

5. Enter judgment in favor of HAVRANEK for compensatory damages for the embarrassment, anxiety, humiliation and emotional distress HAVRANEK has suffered and continues to suffer;

6. Award HAVRANEK punitive damages;

7. Award to HAVRANEK all costs and reasonable attorney's fees incurred in connection with this action;

8. Award prejudgment interest on all monetary recovery obtained;

9.  An injunction permanently enjoining UNIVERSITY OF FLORIDA, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which violates the FPWA;

10. An injunction permanently enjoining UNIVERSITY OF FLORIDA, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which violates the Florida Worker's Compensation Law;

11. An injunction permanently enjoining UNIVERSITY OF FLORIDA, its officers, agents, employees, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of gender; and

12. Grant such additional or alternative relief as may appear to the court to be just and equitable.

## JURY TRIAL DEMAND

Plaintiff, NIKOL HAVRANEK demands a trial by jury on all issues so triable.

Dated May 19, 2020.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
ANDREA C. SCONZO, ESQUIRE
Florida Bar No.: 0105578
**Primary Email:** greg@sconzolawoffice.com
**Primary Email:** andrea@sconzolawoffice.com